In re Carmen Walter **GRUETZMACHER,** Debtor.

**Bankruptcy No. WU11–85–00807.**

United States Bankruptcy Court, W.D. Wisconsin.

May 17, 1991.

---

Galen W. Pittman, La Crosse, Wis., for debtor.

George B. Goyke, Wausau, Wis., for creditor Elaine Bauman.

Christa Reisterer, Asst. U.S. Atty., Madison, Wis., for I.R.S.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy . Judge.

This matter comes before the Court on a motion by the debtor to set aside a garnishment of the United States of America, Internal Revenue Service (hereinafter USA–IRS), and on a motion of Elaine Bauman, (f/k/a Elaine Bottensek and f/k/a Elaine Gruetzmacher) creditor, for turnover of assets. The debtor is Carmen Walter Gruetzmacher and he is represented by Galen Pittman, the USA–IRS is represented by Christa Reisterer, and Elaine Bauman is represented by George Goyke. Thomas Walz is representing the U.S. Trustee in this matter.

The relevant facts can be briefly stated. Carmen Gruetzmacher filed a petition under Chapter 11 of the Bankruptcy Code on April 29, 1985. At the time of filing, a divorce proceeding was pending in the Wood County Circuit Court between the debtor and his wife. Certain rights concerning the division of property were settled by a stipulation between the parties in 1986. The stipulation was approved by the Honorable William H. Frawley of the United States Bankruptcy Court for the Western District of Wisconsin, Eau Claire Division, on September 17, 1986, as part of the confirmation of the debtor's plan of reorganization. This stipulation was expressly approved by the state court in its decision granting the divorce. *See In re Marriage of Elaine Gruetzmacher and Carmen Gruetzmacher,* No. 81CV1022 (Wood County Cir.Ct., Wis.) (entered January 30, 1986). The bankruptcy case was later dismissed pursuant to stipulation between the parties on May 19, 1989. On January 23, 1990, the case was reopened on a motion from the creditor, Elaine Bauman, the former wife of the debtor. The U.S. Trustee moved on January 26, 1990, for an order directing the debtor to file updated schedules, setting a § 341 meeting, and noticing all creditors. That motion was withdrawn pursuant to an affidavit of the attorney for Elaine Bauman deposing that the case was reopened for the purpose of enforcing the stipulation entered into in the bankruptcy proceeding. On December 11, 1990, the Bankruptcy Court approved a second stipulation between the parties which settled the alleged default of the debtor under the original stipulation. Pursuant to the second stipulation, the debtor was to make certain payments to his former wife. Shortly before the first payment was due, the USA–IRS issued a garnishment and levy against certain accounts and future ASCS payments of the debtor. The effect of the levy was to allegedly render the debtor unable to comply with the court-approved stipulation. The creditor, Elaine Bauman, then moved for a turnover of assets—the remedy specified in the original stipulation. On February 27, 1991, the debtor filed a motion to set aside the USA–IRS garnishment of funds, alleging that such action violated the automatic stay provisions of the bankruptcy code.

Pursuant to a court request, the creditor filed a brief in support of the debtor's motion and the U.S. Trustee filed a memorandum opposing.

■ The first issue currently before the court pertains to the debtor's motion to set aside the USA–IRS garnishment. The issue is whether, upon reopening a bankruptcy case pursuant to 11 U.S.C. § 350, the automatic stay provisions of 11 U.S.C. § 362 are thereby reinstated.

The Court initially notes that it informed the parties of the case of *In re Trevino*, 78 B.R. 29 (Bankr.M.D.Pa.1987), a case which directly addresses this issue. In *Trevino*, the debtor sought to set aside a foreclosure and sheriff's sale on the grounds that they were conducted in violation of the automatic stay provision of 11 U.S.C. § 362. The debtor had been granted a discharge and his bankruptcy case had been closed, but it was subsequently reopened on a motion by the trustee. The reopening occurred approximately three weeks prior to the sheriff's sale and the debtor alleged that the automatic stay was thereby reinstated. 78 B.R. at 36. The *Trevino* court, in a well reasoned decision, held that the automatic stay was not reinstated upon the reopening of the debtor's case. *Id.* at 38. This Court asked the parties to address the *Trevino* holding in their memoranda.

As a threshold matter, the U.S. Trustee asserts that a case which has been dismissed—as opposed to closed—cannot be reopened pursuant to 11 U.S.C. § 350(b). The Trustee cites *Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Property Builders, Inc.)*, 699 F.2d 963, 965 (9th Cir.1982) and *In re Garcia*, 115 B.R. 169, 170 (Bankr.N.D.Ind.1990) in support of this assertion. While this Court believes the argument has merit, it is a moot issue since this case has already been reopened pursuant to a court order of January 23, 1990.

Addressing the main question at issue here, the creditor in her brief argues that the reopening of the debtor's case did indeed reinstate the automatic stay. While several cases were cited in support of this proposition, the creditor relies principally on *Balsley v. Farmers & Merchants Bank (In re Elliott)*, 81 B.R. 460 (Bankr.N.D.Ill. 1987). In *Elliott*, the debtor inherited property post-discharge but prior to the closing of the case. The final transfer of the inherited property was delayed, however, due to a will contest. The bankruptcy case had been closed before the final transfer and subsequently reopened in order to administer the inherited property as an asset of the case. A bank later acquired a mortgage on the inherited property and received payment on it after the sale of the property. 81 B.R. at 461. The trustee later brought an action to avoid the bank's post-petition mortgage and the bank moved to dismiss the adversary complaint. Count II of the adversary complaint sought to avoid the fixing of the mortgage pursuant to § 362(a)—the automatic stay provision. In ruling on the bank's motion to dismiss, the *Elliott* court allowed Count II to stand. *Id.* at 463. The sole justification given for this part of its decision was the statement that "[t]here is no statute of limitations on an action brought under Section 362(a) of the Code ..." *Id.*

It is on the basis of these facts that the creditor cites *Elliott* for the proposition that the reopening of a case reimposes the automatic stay. *Creditor's Brief* at 5.

The Court finds the creditor's reliance on *Elliott* both misplaced and unconvincing. First, *Elliott* neither asserts nor stands for the broad proposition that the reopening of a case reimposes the automatic stay. The *Elliott* court did not address this issue; the aforementioned proposition can at best be extrapolated from a loose interpretation of the facts of the case. Aside from the single sentence quoted above, the *Elliott* court provided no explanation for its decision to allow the Count alleging a postclosure violation of the automatic stay to stand. Nevertheless, there is a provision of the Bankruptcy Code which serves to justify this part of the *Elliott* holding which is inapplicable to the present case. That provision is § 362(c)(1) which provides:

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (c) of this section continues until such property is no longer property of the estate.

11 U.S.C. § 362(c)(1) (West 1991). Pursuant to § 541(a)(5), the post-petition inherited property at issue in *Elliott* became property of the estate, since the testator died within 180 days of the filing. As such, then, the automatic stay of § 362 remained in effect as to that property until it was no longer property of the estate pursuant to 11 U.S.C. § 362(c)(1). The inherited property remained property of the estate until it was sold on August 16, 1985. *See Elliott*, 81 B.R. at 461. The mortgage acquired by the bank was obtained before the property was sold, thus at a time when it was still property of the estate. Pursuant to § 362(c)(1) then, the automatic stay was in effect as to that specific property at the time the bank obtained its mortgage and the *Elliott* court's decision as to Count II can be supported on that ground. In the present case, the bankruptcy "estate" ceased to exist on May 19, 1989, when the case was dismissed. At dismissal, any of the remaining property reverted to the debtor or his spouse pursuant to the terms of the stipulation. Unlike *Elliott*, there was no property here of uncertain ownership status so as to call § 362(c)(1) into play. The *Elliott* decision, therefore, is factually distinguishable from the present case, its holding can be supported from provisions of the Bankruptcy Code not applicable here, and it does not stand for the broad proposition that upon reopening of a case, the automatic stay is reimposed.

Nor do any other of the cases cited by the creditor stand for this proposition. The creditor cites *Harris v. Nutting (In re MCI, Ltd.)*, 19 B.R. 897 (Bankr.E.D.Wis. 1982) for the broad proposition that a reopening of a case "places the parties back in the position they occupied prior to the closing of the case, including all procedural and substantive rights." *Creditor's Brief* at 3. *MCI* involved a question of whether the old or new bankruptcy act applied to a case which had been closed under the 1898 Bankruptcy Act and later reopened after the new Code went into effect. 19 B.R. at 898. In holding that the 1898 Act applied to the adversary proceeding at issue, the *MCI* court stated "[The order to reopen] revived the original bankruptcy as well as all the procedural and substantive rights affecting related proceedings." *Id.* at 899. Aside from this general statement the *MCI* court did not even address the automatic stay issue involved in the present case. It is clear that *MCI* involved a fact scenario completely different from the case currently before the Court and therefore cannot be persuasively used to support the broad proposition asserted by the creditor here. The Court has examined the other cases offered by the creditor in support of its arguments and finds them equally lacking in persuasive authority for the present case.

The Court finds the aforementioned *Trevino* case to be the strongest authority among all the cases cited on this issue and the most closely related factually to the present one. The creditor has failed in her cursory attempt to explain why *Trevino* should not apply here. The *Trevino* case correctly notes that "[t]he plain language of § 362(c)(2) indicates that the automatic stay remains in effect only until the time the case is closed, dismissed, or until a discharge is granted or denied." *Trevino*, 78 B.R. 29, 37 (Bankr.M.D.Pa.1987), *citing with approval In re Solar Equipment Corp.*, 19 B.R. 1010 (W.D.La.1982). The *Trevino* court further notes that once a case is closed or dismissed (as happened here), the court lacks jurisdiction to continue the imposition of the automatic stay provisions of § 362 of the Bankruptcy Code. *Trevino*, 78 B.R. at 37. Finally, the *Trevino* court notes that "there is no statutory provision in which Congress has authorized a Bankruptcy Court once it has terminated the automatic stay pursuant to § 362(c)(2) to continue imposition of the automatic stay." *Id.*

The Court finds this reasoning sound and directly applicable to the matter currently before it. This bankruptcy case was dismissed on May 19, 1989, and the automatic stay was thereby terminated pursuant to

§ 362(c)(2). The Court, therefore, lacks jurisdiction to continue the imposition of the automatic stay provisions post-dismissal. *See Trevino*, 78 B.R. at 37; *In re Solar Equipment Corp.*, 19 B.R. 1010, 1011 (W.D.La.1982). *See also In re Presidio Bridge Co.*, 124 B.R. 242 (Bankr.W.D.Tex. 1991).

This bankruptcy case was reopened on January 23, 1990, solely for the limited purpose of considering whether to enforce the prior stipulation entered into between the parties in settlement of their divorce proceeding. As asserted in the aforementioned cases, this Court has no authority to reinstate the powerful automatic stay provisions upon reopening. To do so would severely restrict all creditors of the debtor merely on the basis of a dispute involving one of his creditors—his former wife. As noted, this case was reopened for a very limited, narrow purpose—to determine whether enforcement of the stipulation between the debtor and his former wife was appropriate. The creditor has cited no statutory or judicial authority which would justify such a drastic expansion of the debtor's rights as against other creditors such as the USA–IRS who had no interest whatsoever in the limited matter which necessitated the reopening of the case. To the contrary, § 362(c) of the Bankruptcy Code, as applied in *In re Trevino* and *In re Solar Equipment Corp.*, specifically and unequivocally prohibits such an expansion.

Equity considerations cited by the U.S. Trustee also support a denial of the debtor's motion to set aside the USA–IRS levy. The U.S. Trustee, upon receiving notice of the reopening of the case, sought an order directing the debtor to file updated schedules and setting a new § 341 meeting. Only after receiving assurances in an affidavit from the creditor's attorney that the reopening was for the limited purpose of enforcing the prior stipulation, did the U.S. Trustee withdraw its motion. To allow the debtor, working in conjunction with his ex-wife, to now greatly expand the effect of the reopening of the case beyond the prior agreed-upon limit would be manifestly unfair.

The Court therefore holds that the reopening of the debtor's bankruptcy case on January 23, 1990, did not reinstate the automatic stay provisions of 11 U.S.C. § 362. Accordingly, the debtor's motion to set aside the USA–IRS garnishment is denied.

■ The second motion before the Court is the motion of Elaine Bauman for turnover of assets. The Court notes initially that the state court, in its original divorce decision, stated that "[t]he Federal Bankruptcy Court has exclusive jurisdiction on the issue of division of property of the parties ..." *In re Marriage of Elaine Gruetzmacher and Carmen Gruetzmacher*, No. 81CV1022 (Wood County Cir.Ct., Wis.) (entered January 30, 1986). While Judge Frawley of this Court initially approved the parties' stipulation dividing their property, the state court's subsequent approval of it enables that court to properly assert jurisdiction over matters pertaining to it. Jurisdiction over this matter properly rests with the state court in light of the well settled principle that federal courts, including the Bankruptcy Court, do not have jurisdiction over determinations of alimony, maintenance, support, or property settlement pursuant to a divorce proceeding. *See, e.g., Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir. 1983); *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2nd Cir.1981); *West v. West (In re West)*, 95 B.R. 395, 400 (Bankr.E.D.Va. 1989); *Hund v. Miller (In re Miller)*, 36 B.R. 403, 405 (Bankr.N.D.Ohio 1984); *Davich v. Minnesota (In re Davich)*, 27 B.R. 888, 891–92 (Bankr.D.S.D.1983). The motion for turnover of assets arises pursuant to the terms of a stipulation between the debtor and his ex-wife which settled the division of property in their divorce. State courts have exclusive jurisdiction over the division of property between spouses pursuant to a divorce. It is appropriate and proper, therefore, that the motion for turnover of assets currently before this Court be sent back to the state court for decision. The motion arises out of the stipulation pursuant to the parties' divorce and it was the state court which rendered judgment as to that divorce.

Accordingly, the motion of Elaine Bauman for turnover of assets should properly be brought before the Wood County Circuit Court for determination.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.