(No. 31004.—

TRUSTEES OF SCHOOLS, Appellant, *vs.* HELEN CLIPPINGER *et al.*—(ALLAN A. MYERS, Appellee.)

*Opinion filed Sept. 22, 1949—Rehearing denied November 21, 1949.*

L. Dow Nichol, Jr., and Tenney, Sherman, Rogers & Guthrie, (Henry F. Tenney, and S. Ashley Guthrie, of counsel,) all of Chicago, for appellant.

Russell W. Keeney, of Wheaton, for appellee.

Mr. Justice Crampton delivered the opinion of the court:

Petitioner-appellant, Trustees of Schools of District No. 41, Du Page County, appeals from an order of the circuit court dismissing its petition for condemnation of a lot for a playground immediately adjacent to the junior high school in Glen Ellyn.

The petition and a motion to dismiss filed by the defendant Allan A. Myers were the only pleadings in the case. Defendant urged only the one point that a valid contract existed between the parties for the purchase of the lot and that, therefore, the petition could not be filed. The court sustained this motion and dismissed the petition.

Defendant introduced no evidence, all the salient facts necessary to a determination hereof having been supplied by petitioner's witnesses and exhibits.

Title to the premises in question was acquired by Myers as sole devisee under the foreign will of his aunt, Lucy A. (Lucile) Rhoades, who died a resident of Milwaukee, Wisconsin, in 1939. On August 29, 1945, Myers sold the premises to the board of education for $6800, and under the terms of the agreement the board was entitled to immediate possession, assumed the taxes, and was given the right to remove all structures and to grade and fill the lot. Myers agreed to convey a good title within six months therefrom. There was no provision that time was of the essence. The board knew of the existence of the will at the time the contract was made.

One year later, and six months after title was to have been conveyed under the terms of the contract, the board removed the old dilapidated buildings on the property and graded and filled the lot, prepared plans for improvements thereon, and, as far as the record shows, remained in possession.

The will was not actually admitted to probate until May 24, 1948, nearly four months after the filing of the condemnation petition. The petition for letters and the will were filed March 14, 1946, and a proof of heirship was taken and filed *nunc pro tunc* as of March, 1941. The petition for letters was sworn to September 5, 1941. The long delay in the probate proceedings is not explained by the record. During the interim, frequent inquiries had been made of Myers as to the status of the probate and title proceedings.

The petition for condemnation, filed January 20, 1948, recited, among other things, that negotiations for the purchase from Myers had failed and petitioners had been unable to agree with the "owners and parties interested in said property as to the compensation to be paid." All of the nieces, nephews, grand nieces, and grand nephews and "Unknown owners" were made parties defendant. These parties, other than Myers, had no interest whatsoever in the premises, except the bare right to contest the will. Since real estate passes directly on death to the devisees thereof, Myers, as sole devisee, was the only real party in interest and could contract for the sale of his property immediately after the death of the testator, subject only to such title as would be acceptable to the purchaser. We, therefore, think the provisions of the Eminent Domain Act permitting the taking of property where the owner is incapable of consenting, and the provisions with respect to the unknown or nonresident owners, have no application to the facts of this case. These other defendants may have been proper parties defendant in a condemnation action, if the same

be properly instituted, but they are in no sense necessary or indispensable parties under the facts shown here.

The issue, therefore, resolves itself between the plaintiff trustees and the defendant Myers. The first notice the latter had that the board sought to abrogate the contract was the filing of the condemnation suit. While the board had passed a resolution about a month earlier reciting that Myers was in default and authorizing the suit, there is no showing Myers had received any notice of this resolution until the hearing on the motion to dismiss. On April 15, 1948, nearly three months after the suit was filed, the board sent Myers a letter, based upon a purported resolution, that the contract was terminated and canceled as of that date, owing to Myers's failure to deliver a good fee-simple title.

The case presents the plain question:—can a corporate authority institute condemnation proceedings when there is a contract for a stipulated price existing between the parties?

The Eminent Domain Act provides for the taking of property where "the compensation to be paid * * . * cannot be agreed upon by the parties interested." Ill. Rev. Stat. 1947, chap. 47, par. 2.

The School Code (Ill. Rev. Stat. 1947, chap. 122, par. 14-7) provides that whenever any lot is needed by a school district for any educational purpose and "compensation for the lot or parcel of land cannot be agreed upon between the owners thereof and the trustees," the school district "may have the compensation determined in the manner provided by law for the exercise of the right of eminent domain."

Only after there has been a failure to agree can a petition to condemn be filed. *City of Chicago v. Collin*, 302 Ill. 270.

The appellant cites a number of cases which it is contended are in support of the proposition the petitioner has

a clear right to condemn and that the same is unaffected by the existence of the Myers contract. A detailed analysis of all of these cases cited discloses they involve a mere license to be in possession, or were in lieu of rather than in conformity with a contract, or it was found there was no agreement at all, or the agreement itself was not one of purchase but one limiting, restricting, or impairing the right of the sovereign to exercise the essential governmental attribute of eminent domain, and we do not consider them controlling under the facts as outlined here.

Appellant contends defendant breached the terms of the contract and that, therefore, the same was abrogated and at an end. The contention is based solely on defendant's failure to deliver title within six months.

Possession alone does not bar the right to condemn, but possession taken under the terms of a contract to purchase, after a time limitation for delivery of the deed has expired, constitutes strong evidence of a waiver of that limitation. We incline to the view that the entry into possession, the grading and filling of the lot, the preparation of plans for improvements thereon, the repeated inquiries as to the progress of the title proceedings, and the failure to cancel the contract prior to the institution of the suit, all long subsequent to the expiration of the six months' time limitation, constituted a waiver of this provision. In truth, the board must, or should, have known delivery of merchantable title could not have been made within the time limit as provided and until the probate proceedings were completed. To allow the board to repudiate its contract with Myers at this late date would not only be unconscionable and a violation of the right of contract but a disregard of the plain provisions of the eminent domain statutes.

The court cannot now, after the removal of the structures, inadequate as they may have been, and in view of all the circumstances here, permit the board to repudiate

its obligation to purchase at an agreed price in order to gamble, with changed conditions, on the possibility of a lesser amount of compensation to be assessed by a jury, and if the fair weather indicator fails to show with sufficient clarity, then to repudiate the verdict and, if the board so elects, to abandon the procedings. It is not claimed that Myers is not now in a position to deliver. He should be paid the amount of his contract. We hold there was a valid, existing and subsisting agreement at the time the suit was filed.

The judgment of the circuit court of Du Page County is, therefore, affirmed.

*Judgment affirmed.*